THOMAS G. JARRARD
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
Telephone: (425) 239-7290

MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 409
Spokane, WA 99201-0300
Telephone: (509) 850-7011

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| DANIEL ESPINOZA,<br><br>     Plaintiff,<br><br> v.<br><br>THE CITY OF SEATTLE, WASHINGTON, and LIEUTENANT THOMAS MAHAFFEY, individually,<br><br>     Defendants. | NO.  17-cv-1709<br><br>COMPLAINT FOR VIOLATIONS OF USERRA, AND THE WLAD DEMAND FOR DAMAGES, AND TRIAL BY JURY<br><br>**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |

## INTRODUCTION

This civil action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4335 (USERRA) and is exempt from filing fees under 38 U.S.C. § 4323(h)(1).

Plaintiff, Daniel Espinoza, hereinafter "Mr. Espinoza" or Plaintiff"), by the undersigned attorneys, avers as stated herein.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 1

# I.   PARTIES AND JURISDICTION

1.1   Mr. Espinoza resided within the Western District of Washington at all times pertinent hereto.

1.2   Defendant, City of Seattle, Washington maintains a place of business within this judicial district, and is a "private employer" as defined by 38 U.S.C. § 4323(i).

1.3   Defendant, Thomas Mahaffey is a lieutenant of the Seattle Police Department, a supervisor, and had control of the employment opportunities of Mr. Espinoza, was a primary decision maker regarding Defendants' violation of Mr. Espinoza's rights, and for the purposes of 38 U.S.C. § 4303(4) is an employer.

1.4   On September 13, 2017, Mr. Espinoza filed a Notice of Tort Claim with the City of Seattle, numbered C-94889.

1.5   On September 18, 2017, the City of Seattle Claims Manager, Rick Eilman, sent Plaintiff a letter stating that he assigned the case to him personally.

1.6   On October 11, 2017, Mr. Eilman sent a letter to Plaintiff stating that the investigation was completed and the claim is denied.

1.7   All acts complained of occurred in the Western District of Washington.

1.8   The Federal Court for the Western District of Washington has jurisdiction over this matter under 38 U.S.C. § 4323(b)(1)-(3) and 28 U.S.C. § 1331.

1.9   This Court has personal and subject matter jurisdiction.

1.10   Venue is proper in the Federal Court for the Western District of Washington under 38 U.S.C. § 4323(c)(1)-(2) and the Defendant exercised authority in this judicial district.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 2

## II.     FACTS

2.1    Plaintiff incorporates the above paragraphs.

2.2    Defendant, City of Seattle, hired Mr. Espinoza on March 5, 1998.

2.3    Thereafter, Mr. Espinoza attended the Police Academy and received his police officer commission in August 1998. Mr. Espinoza further attended ACT school, undercover school, bicycle training, crowd control instructor, Taser instructor training, antiterrorism training, defensive tactics instructor, and more. Mr. Espinoza also completed the Police Motorcycle Course in August 2012.

2.4    Throughout the entirety of his employment with the Seattle Police Department Mr. Espinoza served in the United States Marine Corps Reserve (USMCR).

2.5    Mr. Espinoza's USMCR duties required that he conduct military duty in lieu of his scheduled weekend work shifts, conduct military duty for multiple weeks for training and readiness purposes, and, from time-to-time deploy overseas to serve in combat.

2.6    On or about April 2006, Defendant advertised an opening for position on the Department's bicycle squad.

2.7    Shortly thereafter Mr. Espinoza applied for that position.

2.8    Shortly after Mr. Espinoza applied for the bicycle squad position, but before the position was filled, Fred Ibuki, a sergeant in the Department stopped Mr. Espinoza in the hallway and asked "are you still in the reserves." Mr. Espinoza responded in the affirmative.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 3

2.9    Upon information and belief Sergeant Ibuki either served as a member of the hiring panel or conveyed, to the hiring panel, the fact that Mr. Espinoza was still in the Marine Corps Reserves.

2.10    Upon information and belief, Mr. Espinoza's service in the USMCR played a part in the Department's decision to hire other lesser qualified individuals, onto the bicycle squad.

2.11    Additionally, Mr. Espinoza also applied for the following Bomb Squad, Narcotics, and Homeland Security positions but was not selected for any of those positions. Instead the above-referenced positions were filled by police officers who were less qualified and experienced than Mr. Espinoza.  The police officers who were hired into those positions were not, upon information and belief, members of the military reserves.

2.12    During the August 2014 timeframe Mr. Espinoza requested to be transferred to the Department's Motorcycle Unit. However, Lieutenant Mahaffey, without explanation, denied Mr. Espinoza's request.

2.13    During the September 2014 timeframe the department assigned Mr. Espinoza a new supervisor, Sergeant Andrew Zwaschka. Upon information and belief Sergeant Zwaschka was not a member of the military reserves.

2.14    Mr. Espinoza informed Sergeant Zwaschka of his (Espinoza's) military reserve requirements and of the fact that Mr. Espinoza designated his military reserve obligations on the Department's calendar by "circling" those military reserve days as "furlough days."  Sergeant Zwaschka negatively reacted to what Mr. Espinoza said, saying words to the effect of "about that… We need you to be here on the days you are

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 4

1
2
3
4

scheduled and not working the days you are not scheduled to work." The tone of Sergeant Zwaschka's voice coupled with the context in which the conversation took place led Mr. Espinoza to believe that the Department was frustrated with the amount of military leave that Mr. Espinoza was taking.

5
6
7
8

2.15   Mr. Espinoza explained to Sergeant Zwaschka that his military reserve obligation required him to be gone regardless of whether or not he designated that leave as a furlough.  Mr. Espinoza further explained that his working on furlough actually helped the Department and cost Mr. Espinoza a day off of work.

9
10
11
12
13
14
15

2.16   Sergeant Zwaschka told Mr. Espinoza to speak to Lieutenant Mahaffey about the furlough issue whereupon Mr. Espinoza stated that he was being discriminated against on account of his military service and showed Lieutenant Mahaffey a copy of the Uniformed Services Employment and Reemployment Rights Act (USERRA) which, in turn, resulted in Lieutenant Mahaffey telling Mr. Espinoza that he could continue with "circling" furlough days.

16
17
18

2.17   Within a few days, Mr. Espinoza learned that Lieutenant Mahaffey instructed Sergeant Zwaschka to tell Mr. Espinoza that he could not "circle" furlough days.

19
20
21
22
23
24

2.18   Upon information and belief, Lieutenant Mahaffey took Mr. Espinoza's having shown him (Mahaffey) a copy of USERRA as a "challenge" to Lieutenant Mahaffey's authority, thus causing him (Mahaffey) to embark on a pattern or practice of retaliatory behavior in which Lieutenant Mahaffey sought to punish Mr. Espinoza for any and all workplace faults regardless of their severity or validity.

25

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 5

1

2.19    On October 28, 2014, while working in the Queen Sector, Mr. Espinoza

2

traveled across the Ballard Bridge. Mr. Espinoza traveled across the Ballard Bridge

3

because a work related call required that he do so. While across the bridge Mr.

4

Espinoza spent approximately 14 minutes attempting to locate a colleague that he had

5

not seen for quite some time.  Mr. Espinoza then drove back across the Ballard Bridge

6

into the Queen Sector.

7

2.20    Immediately after returning to the Queen Sector Mr. Espinoza received a

8

radio call instructing him to report to Lieutenant Mahaffey.  Mr. Espinoza reported to

9

Lieutenant Mahaffey.  Lieutenant Mahaffey asked Mr. Espinoza why Mr. Espinoza was

10

in Ballard.  Mr. Espinoza told Lieutenant Mahaffey why.  Lieutenant Mahaffey accused

11

Mr. Espinoza of lying and stated that Department policy required that Mr. Espinoza

12

receive supervisor approval before going outside of his precinct area.  The policy that

13

Lieutenant Mahaffey claimed Mr. Espinoza violated did not exist as Mr. Espinoza and

14

his similarly situated coworkers routinely traveled across the Ballard Bridge without

15

repercussion.

16

2.21    Lieutenant Mahaffey then, without warning, transferred Mr. Espinoza to

17

the Mary Sector.  Mr. Espinoza then exited Lieutenant Mahaffey's office and proceeded

18

toward the break room.  While in the break room Mr. Espinoza ran into Sergeant Rob

19

Brown, a Mary Sector supervisor.  Mr. Espinoza informed Sergeant Brown that he

20

would be joining his squad the following day.  Sergeant Brown stated that he "already

21

knew."  The import of Sergeant Brown's statement made clear that Mr. Espinoza's fate

22

was pre-determined, that the "meeting" Lieutenant Mahaffey had with Mr. Espinoza in

23

the Lieutenant's office was not to get Mr. Espinoza's side of the story, but to serve as a

24

25

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 6

pretext for the true retaliatory reason of punishing Mr. Espinoza for exercising his USERRA rights.

2.22   Upon information and belief Mr. Espinoza is the only officer who served under Lieutenant Mahaffey who was, without warning, transferred to a different sector for violating the above-referenced "policy."

2.23   On November 3, 2014, Mr. Espinoza informed Captain Christopher Fowler, the Precinct Commander, regarding Lieutenant Mahaffey's harassment and discrimination. That same day Mr. Espinoza requested, in writing, that he be transferred to an alternate unit.

2.24   Upon information and belief, Captain Fowler told Lieutenant Mahaffey of Mr. Espinoza's complaint.

2.25   Upon information and belief, Captain Fowler, himself a highly decorated military officer with the Washington Army National Guard, expressed concern to Lieutenant Mahaffey about Mr. Espinoza's military discrimination allegations which, in turn, caused Lieutenant Mahaffey to go after Mr. Espinoza with renewed vigor.

2.26   Upon information and belief, Lieutenant Mahaffey set out to "spread the word" among the Department's supervisors that Mr. Espinoza was a "troublemaker" who had no problems elevating issues relating to discrimination retaliation up the chain of command.

2.27   During the December 2014 timeframe Mr. Espinoza requested to be transferred to the Department's Motorcycle Unit. However, Lieutenant Mahaffey, without explanation, denied Mr. Espinoza's request.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 7

2.28   During the March 2015 timeframe another one of Mr. Espinoza supervisors, Sergeant Bryan Long, asked Mr. Espinoza about a box that Mr. Espinoza checked "no" to on a report. Mr. Espinoza stated that he checked "no" because he had not downloaded the report. Sergeant Long then told Mr. Espinoza that the report should be marked "yes", Mr. Espinoza changed the report to "yes" per the supervisor's instruction only to later find out that the report should had been marked "no" all along. Regardless of the fact that Mr. Espinoza was correct, Lieutenant Mahaffey told Sergeant Long to file a complaint against Mr. Espinoza for lying.  Mr. Espinoza was then written up for the incident.

2.29   During the May 2015 timeframe Mr. Espinoza spoke with the supervisor of the Motorcycle Unit and asked about his transfer status. The Motorcycle Unit supervisor, Lieutenant Kuehn, told Mr. Espinoza that Lieutenant Mahaffey had contacted him and informed the Motorcycle Unit supervisor that there were "issues with" Mr. Espinoza.  The Motorcycle Unit supervisor would not elaborate on what those "issues" were.

2.30   During the July 2015 timeframe Mr. Espinoza again attempted to transfer out of his precinct.  Mr. Espinoza wrote another memo requesting such a transfer.  Mr. Espinoza was physically seated next to a coworker, Officer Mike Sudduth, while that coworker was also writing a transfer request.  That day both individuals (Sudduth and Espinoza) submitted their transfer requests.  Within thirty days Officer Sudduth, and several other individuals, were all transferred.  Mr. Espinoza was the only one not transferred.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 8

2.31   On July 29, 2015 Mr. Espinoza contacted the Department's Assistant Chief and, again, complained that he was being discriminated against on account of his military obligations and, again, requested a transfer.  The Assistant Chief Steve Wilske told Mr. Espinoza that he would "look into" the allegations and "get back" to Mr. Espinoza.  The Assistant Chief did not "get back" to Mr. Espinoza.

2.32   On September 24, 2015 Mr. Espinoza responded to a horrific motor vehicle accident involving a "Duck Boat" tour vehicle.  Lieutenant Mahaffey was also present at the accident scene.  At no time did Mr. Espinoza or Lieutenant Mahaffey speak with each other that day.  Later that day Mr. Espinoza's supervisor removed him (Espinoza) from the accident scene because Lieutenant Mahaffey requested the removal even though Mr. Espinoza had done nothing wrong.

2.33   In approximately July 2015, Lieutenant Mahaffey was, for reasons unrelated to any request made by Mr. Espinoza, transferred out of Mr. Espinoza's chain of command.

2.34   Nonetheless, in the April 2017 timeframe Lieutenant Mahaffey again continued his retaliatory campaign against Mr. Espinoza. In this instance an investigation occurred regarding a December 15, 2015 incident regarding Mr. Espinoza and a coworker's transportation of a prisoner.  Although Department policy requires that such investigations conclude within 180 days post-incident, that practice was not followed.  Instead, in the April 2017 timeframe Mr. Espinoza learned, for the first time, that Lieutenant Mahaffey had added an additional charge to the investigation based upon a separate event that did not occur on December 15, 2015, but on a different day regarding a different alleged incident.  Additionally, although Mr. Espinoza and another

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 9

officer were involved in the December 15, 2015 incident, Lieutenant Mahaffey only investigated Mr. Espinoza.

2.35   Mr. Espinoza is the only individual in his motorcycle training class that has been denied a transfer to the motorcycle unit.  He passed his class in August 2012.   Mr.   Espinoza   underwent   that   motorcycle   training   with   7   other individuals.  Thereafter, there have been two additional motorcycle classes and 6 other individuals who have passed the training.  All of whom have been assigned to the motorcycle unit.  Upon information and belief the other individuals who underwent motorcycle training were (a) not members of the military reserves, or (b) were members of the military reserves; but, did not make military-related complaints of discrimination to management.

2.36   As of March 3, 2014, all members of Mr. Espinoza's August 2012 motorcycle class had been transferred to the Department's Motorcycle Unit, with the average class-to-Motorcycle Unit transfer taking approximately 6 to 12 months. However, as of the date of this lawsuit Mr. Espinoza's has not been transferred to the Motorcycle Unit and his having not been transferred to the Motorcycle Unit was in retaliation for his exercise of the above-referenced USERRA rights and also in discrimination on account of Mr. Espinoza's military obligations.

2.37   Mr. Espinoza is a vested participant in the Law Enforcement Officers and Fire Fighters (LEOFF 2) retirement plan.

2.38   In April, May, June, and July 2003 Mr. Espinoza was deployed as part of the USMCR in support of operations Enduring Freedom and Iraqi Freedom.  Upon his return form that military service, and reemployment, he was denied the opportunity to

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 10

make contributions and the Defendant failed to make contributions, or apply service credits to his retirement account.

2.39   In March, April, May, June, July, August, September and October 2005, Mr. Espinoza again deployed in support of operations in Iraq.   Upon his return form that military service, and reemployment, he was denied the opportunity to make contributions and the Defendant failed to make contributions, or apply service credits to his retirement account.

2.40   In April, May June, July, August, and September 2011, Mr. Espinoza was again called to active duty.   Upon his return form that military service, and reemployment, he was denied the opportunity to make contributions and the Defendant failed to make contributions, or apply service credits to his retirement account.

2.41   In December 2011, January, February, March, April, May and June of 2012, Mr. Espinoza was again called to active duty.   Upon his return form that military service, and reemployment, he was denied the opportunity to make contributions and the Defendant failed to make contributions, or apply service credits to his retirement account.

2.42   The above actions of Defendants, denial benefits of employment, transfers has cost Mr. Espinoza significant losses of pay, overtime and the selection of his employment location and hours.

2.43   To the extent that Defendants allege that the application of any State law, local law or ordinance, contract, agreement, policy, plan practice, or other matter constitutes any limitation on Mr. Espinoza's rights under USERRA, it is illegal, inapplicable, null, void and has no force or effect pursuant to 38 U.S.C. § 4302.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 11

2.44    During all times mentioned herein, Defendant with knowledge and responsibility have, separately and in concert, engaged in illegal and negligent conduct to the injury and humiliation of Mr. Espinoza which deprived him of the rights, privileges, and immunities secured to him under the laws of the United States and Washington State by virtue of his honorable service to the United States in the uniformed service.

### III.    CAUSES OF ACTION

3.1    Plaintiff re-alleges the above paragraphs.

3.2    Defendants violated Mr. Espinoza's rights as guaranteed by the Washington Law Against Discrimination (WLAD) and USERRA, including, but not limited to: § 4311 discrimination and retaliation in employment; §§ 4316 and 4318, rights and benefits of persons absent from employment for service in the armed forces.

### (COUNT 1 – VIOLATION OF THE WLAD)

3.3    The WLAD bars an employer from discriminating against an employee based upon that employee's military or veteran status.

3.4    Mr. Espinoza's military/veteran status was, for the reasons set out above, a substantial factor in defendants' decision to, among other things, deny him benefits of employment.

### (COUNT 2 – DISCRIMINATION IN VIOLATION OF 38 U.S.C. § 4311(a))

3.5    Defendants violated 38 U.S.C. § 4311 of USERRA, such that Mr. Espinoza's membership in the uniformed service was a motivating factor in decisions by defendants that adversely affected his employment.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL -  12

3.6    Defendants unlawfully discriminated against Mr. Espinoza, among other ways, by denying him benefits of employment, in part, based upon his membership in the uniformed service, a right provided by USERRA.

**(COUNT 3 – RETALIATION IN VIOLATION OF 38 U.S.C. § 4311(b))**

3.7    Defendants' actions caused the violation of Mr. Espinoza's USERRA rights such that his actions to enforce a protection afforded to her under USERRA, or to exercise a right provided by USERRA, was a motivating factor in defendants' decision to deny him benefits of employment.

3.8    Defendants unlawfully retaliated against Mr. Espinoza, among other ways, by denying him benefits of employment because he took action to enforce a protection afforded under USERRA, or to exercise a right provided by USERRA.

3.9    Defendants unlawfully retaliated against Mr. Espinoza, among other ways, when Mr. Espinoza took action to enforce protections afforded to him under USERRA, by, *inter alia,* continuing to deny him transfers, subjecting him to meritless investigations, and subjecting him to hostile treatment for petty violations of nonexistent or never enforced policies, causing him loss of pay and status.

**(COUNT 4 – VIOLATION OF 38 U.S.C. § 4316)**

3.10    Defendants violated 38 U.S.C. § 4316 by, among other things, denying Mr. Espinoza the rights and benefits determined by seniority and such other rights and benefits not determined by seniority Mr. Espinoza would have attained if he had remained continuously employed, including but not limited to, pay, days off, work assignments and location of employment.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 13

**(COUNT 5 – VIOLATION OF 38 U.S.C. § 4318)**

3.11    Upon information and belief, defendants violated 38 U.S.C. § 4318, among other ways, by failing to make contributions and denying Mr. Espinoza the right to make contributions to a retirement plan, by failing to give timely and adequate notice to the plan administrator as required under the USERRA, and denying his service credit for periods of military service.

**(COUNT 6 – UNLAWFUL VIOLATION OF 38 U.S.C. § 4323(d)(1)(C))**

3.8    Defendants' conduct as described herein was willful within the meaning of 38 U.S.C. § 4323(d)(1)(C).  Mr. Espinoza is entitled to liquidated damages because defendants' failure to comply with USERRA constitute a willful violation of USERRA.

**IV.    PRAYER FOR RELIEF**

4.1    Mr. Espinoza respectfully demands a jury trial as to his WLAD and USERRA claims, and further to be awarded compensation for all injury and damage suffered.  To wit:

a.    both economic and non-economic damages in the amount to be proven at trial including back pay, front pay, lost benefits of employment, negative tax consequences of any award;

b.    liquidated damages; and,

c.    reasonable attorney and expert fees, and costs, pursuant to 38 U.S.C. § 4323 and as otherwise provided by law.

4.2    Under USERRA, a court may order equitable remedies, including reinstatement and recoupment of any loss of wages or benefits. 38 U.S.C. § 4323(d)(1)(A, B).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

4.3    USERRA also empowers a court to use "its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits" of the service member. *Id.* § 4323(e).  A court may award the prevailing party reasonable attorneys' fees, expert witness fees, and other litigation expenses. *Id.* § 4323(h)(2).

4.4    Based on the violations discussed previously, Plaintiff asks the Court for the following:

a.    Declare that Defendants' decision to deny Mr. Espinoza rights and benefits of employment on the basis of his military/veteran status was unlawful and violated the Washington Law Against Discrimination;

b.    Declare that Defendant's failure to transfer Plaintiff to the Motorcycle Unit, partly because of his military service, was unlawful and violated USERRA, 38 U.S.C. § 4311(a);

c.    Declare that Defendant's failure to transfer Plaintiff to the Motorcycle Unit, partly because Mr. Espinoza took action to enforce protections afforded to him under USERRA was a retaliatory action in violation of USERRA, 38 U.S.C. § 4311(b);

d.    Declare that Defendant's denial of Mr. Espinoza's requests for work assignments and location of employment was unlawful and violated USERRA, 38 U.S.C. § 4316;

e.    Declare that Defendant's denial of Mr. Espinoza the right to make contributions to a retirement plan, and failure to give timely and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 15

adequate notice to the plan administrator as required under the USERRA was unlawful and violated USERRA 38 U.S.C. § 4318;

      f.     Declare that Defendant's violations of USERRA were willful pursuant to 38 U.S.C. § 4323(d)(1)(C);

      g.     Order such other relief as may be just and proper.

DATED this 13th day of November 2017.

*/s Thomas G. Jarrard*
THOMAS G. JARRARD
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
425-239-7290

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011

Attorneys for Plaintiff

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 16