UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL ESPINOZA, <br><br> Plaintiff, <br> v. <br><br> CITY OF SEATTLE, et al., <br><br> Defendants. | CASE NO. C17-1709JLR <br><br> ORDER DENYING MOTION TO AMEND |

## I. INTRODUCTION

Before the court is Plaintiff Daniel Espinoza's motion to amend his complaint. (Mot. (Dkt. # 64); *see also* Prop. SAC (Dkt. # 64-1).) Defendants City of Seattle and Lieutenant Thomas Mahaffey (collectively, "Defendants") oppose the motion. (Resp. (Dkt. # 66).) The court has considered Mr. Espinoza's motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the

//

//

applicable law. Being fully advised,[1] the court DENIES Mr. Espinoza's motion for the reasons set forth below.

## II. BACKGROUND

Mr. Espinoza is a police officer with the Seattle Police Department ("SPD") and a member of the United States Marine Corps Reserve ("USMCR"). (*See* FAC (Dkt. # 31) ¶¶ 2.2-2.4.) Mr. Espinoza filed this action on November 14, 2017 (*see* Compl. (Dkt. # 1)) and amended his complaint with the court's leave on August 24, 2018 (*see* FAC; 8/23/18 Order (Dkt. # 30) at 1-2). On December 18, 2018, the court stayed this case from January 7, 2019 to January 20, 2020, in order to accommodate Mr. Espinoza while he was scheduled to be on active duty military deployment. (*See* Mot. to Stay (Dkt. # 42) at 2; 12/18/18 Order (Dkt. # 60).) In its order staying the case, the court granted the parties an extension until January 7, 2019, to complete discovery, but stated that "[t]he case deadlines that have passed will not be renewed." (12/18/18 Order.) At the time the court issued that order, the deadline to amend pleadings had already expired. (*See* Sched. Order (Dkt. # 17) at 1.)

In the current motion, Mr. Espinoza requests leave to amend his complaint for a second time. (*See* Mot.) The operative complaint that Mr. Espinoza seeks to amend—Mr. Espinoza's first amended complaint—centers entirely on Mr. Espinoza's allegations that Defendants harassed, discriminated, and retaliated against him during his employment with the SPD on the basis of his military status. (*See generally* FAC

---

[1] Neither party requests oral argument, and the court concludes that oral argument is unnecessary. *See* Local Rules W.D. Wash. LCR 7(b)(4).

¶¶ 2.6-2.52.) More specifically, Mr. Espinoza claims that Defendants passed him over for promotions, denied his departmental transfer requests, subjected him to disciplinary actions, and failed to properly administer his retirement plan because of his membership in the USMCR. (*See id.* ¶¶ 2.10-2.11, 2.16, 2.23-2.26, 2.31-2.34, 2.36, 2.39-2.40, 2.42-2.45.) Mr. Espinoza also alleges that when he raised complaints about this alleged harassment and discrimination, Defendants either ignored his grievances or retaliated against him. (*See id.* ¶¶ 2.27-2.30, 2.35, 2.38.) Defendants contest Mr. Espinoza's allegations. (*See generally* Am. Answer (Dkt. # 35) at 4-18.)

Mr. Espinoza now seeks leave to file a second amended complaint that adds a set of factual allegations and causes of action that have no relationship with Mr. Espinoza's discrimination claims. In the proposed second amended complaint, Mr. Espinoza alleges that Defendants' counsel included "Mr. Espinoza's full name, home address, full social security number, tax records and other private information on the public docket" in a filing submitted in this litigation on December 6, 2018. (Prop. SAC ¶ 2.53.) According to Mr. Espinoza, this private information was available overnight on the docket for a total of 12 hours and 12 minutes. (*See id.* ¶¶ 2.63-2.67.) Specifically, Mr. Espinoza claims that Defendants filed his information at 8:12 p.m. on Thursday, December 6, 2018, and sealed that filing by 8:24 a.m. on Friday, December 7, 2018. (*See id.*) As the court's website materials make clear, the court's ECF Support Desk is available from 8:00 a.m. to 5:00 p.m. Monday through Friday.[2] Thus, when Mr. Espinoza's private information

//

---

[2] *See CM/ECF*, W. DIST. OF WASH., https://www.wawd.uscourts.gov/attorneys/cmecf.

was allegedly filed on the docket, the ECF Support Desk that Defendants needed to contact for sealing assistance was closed, but Defendants were ultimately able to seal that court filing 24 minutes after the Support Desk opened the following morning. (*See* Resp. at 2; Prop. SAC ¶ 2.67.)

Based solely on Defendants' court filing and alleged refusal to mitigate the harms Mr. Espinoza's alleged he suffered as a result of his information being published on the court's docket for 12 hours and 12 minutes, Mr. Espinoza seeks to add four causes of action against Defendants, each of which arises under Washington state law: (1) negligence, (2) public disclosure of private facts under RCW 42.56.050, (3) common law invasion of privacy, and (4) outrage. (*See id.* at 19-22.[3]) The court now addresses the merits of Mr. Espinoza's motion.

### III. ANALYSIS

**A. Legal Standard**

Once the court files a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 and the deadline for amending a pleading or joining a party expires, a party's motion to amend a pleading or join an additional party is governed by Rule 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 16, a party must show "good cause" for amendment in order to justify modifying the case schedule. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good

//

---

[3] Because Mr. Espinoza mislabeled the paragraphs in section III of the proposed Second Amended Complaint, all citations to that section refer to the page numbers generated by the court's electronic filing system.

cause and with the judge's consent."); *see also Johnson*, 975 F.2d at 608. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. To show "good cause" a party must show that it could not meet the deadline imposed by the scheduling order despite its diligence. *Id*.

If a party is able to show "good cause" to amend the case schedule under Rule 16, it must then demonstrate that amending the pleading at issue is proper under Rule 15. *See id.* at 608; *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570RSL, 2014 WL 2573290, at *2 (W.D. Wash. June 9, 2014). Under Rule 15, the court should "freely give" leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Five factors are used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended its pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

**B.    Mr. Espinoza's Request to Modify the Case Schedule**

The deadline to amend pleadings expired on November 7, 2018, and the court made clear in its order staying this case that expired deadlines would "not be renewed." (*See* Sched. Order at 1; 12/18/18 Order.) Although Mr. Espinoza did not file his motion to amend until June 13, 2019, Mr. Espinoza's four-page motion does not ask the court to amend the case schedule to permit him to seek to amend the first amended complaint or explain why there is good cause to do so. (*See generally* Mot). But Defendants brief the timeliness issue in their opposition papers (*see* Resp. at 5-6), and, in his reply, Mr.

Espinoza alleges that good cause exists to amend the case schedule for two primary reasons: (1) the relevant facts did not arise until after the deadline to amend had passed, and (2) Mr. Espinoza had to exhaust his administrative remedies pursuant to RCW 4.96.020. (*See* Reply at 2-3.) Typically, the court declines to consider arguments raised for the first time in reply. *See Coos Cty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("We do not consider arguments raised for the first time in the reply brief."). But given that Defendants identified the correct standard and argued that the motion was untimely on opposition (*see* Resp. at 3-6), the court finds that addressing the issue will cause no prejudice to Defendants.

Although the court is intensely skeptical of Mr. Espinoza's motives in bringing this motion, the court finds that he has shown good cause to amend the case schedule under Rule 16(b)(4). The operative act that gave rise to the newly-added claims in the second amended complaint—defense counsel's alleged failure to redact Mr. Espinoza's personal information in a court until 12 hours and 12 minutes after that filing was published on the docket—did not occur until December 6, 2018. (*See* Prop. SAC ¶ 2.53.) There was no way for Mr. Espinoza to meet the deadline to amend pleadings because that deadline had long since expired at the time the allegedly heinous breach of Mr. Espinoza's privacy occurred. Moreover, as Mr. Espinoza notes, he is statutorily obligated to present the alleged tortious conduct to the City of Seattle and wait for at least 60 days after presentment to file a lawsuit. *See* RCW 4.96.020(4). Mr. Espinoza claims that he filed his notice of tort claim with the City of Seattle on February 19, 2019 and that

his claim was denied on March 14, 2019. (*See* Prop. SAC ¶¶ 1.7-1.9.) Thus, given that the key facts did not arise until the deadline had passed and Mr. Espinoza appears to have diligently pursued his administrative options, the court excuses Mr. Espinoza's delay in moving to amend his complaint and finds that good cause exists to amend the case schedule under Rule 16(b)(4).

**C.      Leave to Amend**

Although Mr. Espinoza establishes good cause to amend the case schedule, the merit of his motion ends there. Rule 15's instruction that the court should "freely give" leave to amend a pleading, Fed. R. Civ. P. 15(a)(2), does not mean that parties are entitled to amend and add specious claims without scrutiny. As Mr. Espinoza recognizes, one of the factors that the court must consider before granting leave to amend is the "futility of amendment." *See Allen*, 911 F.2d at 373; (*see also* Mot. at 4). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (citations omitted). Amendments may be futile on jurisdictional grounds, *see Manning v. Swedish Med. Ctr.*, No. C15-0949JLR, 2016 WL 6216364, at *9 (W.D. Wash. Sept. 30, 2016) ("Amendment of a complaint is futile if the court would not have subject matter jurisdiction over the new claims in the proposed amendment." (citations omitted)); or on the merits where "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," *see Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (citations omitted). Here, Mr. Espinoza's amendment is futile on jurisdictional and immunity grounds. Thus, leave to amend is not warranted.

1. Supplemental Jurisdiction

The first fatal issue with Mr. Espinoza's newly-proposed state law claims is that the court lacks subject matter jurisdiction over them. Although the Defendants do not raise subject matter jurisdiction as grounds to deny Mr. Espinoza's motion, the court can address subject matter jurisdiction *sua sponte*, and will do so here to avoid potentially granting leave to amend to add claims over which the court lacks jurisdiction. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that a federal court is obligated to determine *sua sponte* whether it has subject matter jurisdiction).

The jurisdictional deficiencies in the second amended complaint are best highlighted by contrasting the problematic causes of action in that proposed pleading with the causes of action in the first amended complaint over which the court has jurisdiction. There are seven causes of action in the first amended complaint; six federal discrimination claims and one state law discrimination claim. (*See* FAC ¶¶ 3.3-3.8.) The court has federal question jurisdiction over the six federal claims under 28 U.S.C. § 1331. Although Mr. Espinoza failed to allege jurisdictional grounds for the one state law claim in the first amended complaint—his cause of action under the Washington Law Against Discrimination ("WLAD")—the court has supplemental jurisdiction over that claim under 28 U.S.C. § 1367(a). Under that statute, so long as a federal court has original jurisdiction over some of the claims in the action, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Nonfederal claims are part of

the same 'case' as federal claims when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989)). Mr. Espinoza's WLAD claim relies on the exact same factual allegations that support Mr. Espinoza's federal discrimination claims. (*See* FAC ¶ 3.4.) Thus, there is a common nucleus of operative facts between the WLAD claim and the federal causes of action over which the court has original jurisdiction, meaning the court has supplemental jurisdiction over Mr. Espinoza's WLAD claim.

The same cannot be said for the state law claims Mr. Espinoza now seeks to add. Unlike Mr. Espinoza's WLAD claim—which is factually inseparable from Mr. Espinoza's federal discrimination claims—Mr. Espinoza's newly-proposed claims for negligence, public disclosure of private facts, common law invasion of privacy, and outrage have no factual relationship whatsoever to Mr. Espinoza's federal claims. The gravamen of Mr. Espinoza's federal claims is that Defendants discriminated against him on the basis of his military status. (*See generally* FAC ¶¶ 2.3-2.52.) In contrast, the state law claims Mr. Espinoza alleges this court has supplemental jurisdiction over arise out of defense counsel's alleged failure to redact a document filed with the court in this lawsuit. (*See generally* Prop. SAC ¶¶ 2.53-2.68.) Trial on the merits of Mr. Espinoza's discrimination claims will require evidence about Mr. Espinoza's employment with the City of Seattle and the allegedly discriminatory acts that he claims Defendants engaged in, while adjudication of his new state law claims would devolve into a sideshow over the

content of court filings and counsel's actions or inactions in relation to those court filings. Stated otherwise, "[t]here does not appear to be any overlap [between the state and federal claims] and proof of one claim does not impact resolution of the other." *See Bereket v. Portfolio Recovery Assocs., LLC*, No. C17-0812RSM, 2018 WL 6266606, at *3 (W.D. Wash. Nov. 30, 2018).

The only relationship between the federal discrimination claims and the proposed state law claims is one of procedural happenstance—Mr. Espinoza's new state law claims against Defendants happened to arise during Mr. Espinoza's ongoing federal litigation against Defendants. (*See* Prop. SAC ¶ 2.53.) But that is not enough of a factual nexus to save Mr. Espinoza's proposed claims. The mere fact that the parties have a pre-existing relationship is not enough to bless factually distinct state law claims with supplemental jurisdiction. *See, e.g.*, *Bereket*, 2018 WL 6266606, at *3 ("[T]he relationship between the parties . . . does not constitute a common nucleus of operative facts providing supplemental jurisdiction over all possible claims between the parties. Factually distinct events occurring between Plaintiff, Defendant, and Cobalt during the course of their interactions and relationships are not constituents of a single 'case or controversy.'" (citations omitted)). Relatedly, as another court in this circuit held, "it strains the limits of credulity" to argue that supplemental jurisdiction exists over state law claims that arose during litigation between the parties but otherwise "bear no logical or factual relationship" to the claims over which the court has original jurisdiction. *See R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV-12-8261-PCT-JAT, 2013 WL 12212505, at *4 (D. Ariz. Dec. 17, 2013); *see also BOKF, N.A. v. BCP Land Co., LLC*, No.

6:14-CV-03025-MDH, 2015 WL 2354386, at *5 (W.D. Mo. May 15, 2015) (holding that the court lacked supplemental jurisdiction over state law abuse of process counterclaims because "the facts related to Plaintiff's actions during the course of this litigation (i.e. the purpose for amending the complaint) are entirely separate from facts related to the terms of the contract, the sales of the property, the release of the DPRF funds, and Defendants' actions at or before the time of the sales"); *Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1324-25 (D.N.M. 2011) ("The facts upon which Walker's claims are based relate to Walker's employment at THI of Hobbs and how she was treated during her employment. The facts upon which the Counterclaim are based relate to Walker's actions in filing her Complaint and amended Complaints, and her actions in the litigation. These nuclei of operative fact are not related in time, space, or origin.").

Therefore, due to the complete dearth of overlap between Mr. Espinoza's proposed state claims and his federal discrimination claims, rational counsel would not "ordinarily be expected to try [those claims] in one judicial proceeding" as is required to find a "common nucleus of operative fact" for purposes of exercising supplemental jurisdiction. *See Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 333 F.3d at 925. Thus, leave to amend must be denied as futile because the court lacks subject matter jurisdiction over the proposed state law claims in the second amended complaint. *See, e.g.*, *Bereket*, 2018 WL 6266606, at *3 (denying leave to amend due to absence of supplemental jurisdiction over proposed state law claims). Mr. Espinoza's motion is therefore DENIED.

//

### 2. Litigation Privilege

Although the jurisdictional defects that plague the second amended complaint are sufficient to deny Mr. Espinoza's motion, the court finds that the proposed state law claims are also barred by Washington's litigation privilege. Washington's litigation privilege, which Washington courts also refer to as the "witness immunity" doctrine, arose from the common law principle that "witnesses in judicial proceedings are absolutely immune from suit based on their testimony." *See Bruce v. Byrne-Stevens & Assocs. Engineers, Inc.*, 776 P.2d 666, 667 (Wash. 1989). "The purpose of the rule is to preserve the integrity of the judicial process by encouraging full and frank testimony." *Id.* In order to accomplish that purpose, the litigation privilege holds that "allegedly libelous statements, spoken or written by a party or counsel in the courts of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief." *McNeal v. Allen*, 621 P.2d 1285, 1286 (Wash. 1980). Although the privilege is often stated in terms of witness immunity for in-court testimony, it also applies to the litigation conduct of parties and attorneys. *See id* at 1287 ("[T]he privilege of parties to judicial proceedings is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes."); *Kearney v. Kearney*, 974 P.2d 872, 877 (Wash. Ct. App. 1999) ("Attorneys likewise enjoy immunity from civil liability during judicial proceedings to ensure that they have freedom to secure justice for clients."). Where it applies, "[t]he defense of absolute privilege or immunity avoids all liability." *Id.*

Each of Mr. Espinoza's state law claims arises out of defense counsel's litigation activity—filing documents with the court as part of this lawsuit. (*See* Prop. SAC ¶¶ 2.53-2.68.) As such, those claims are barred by the litigation privilege. In fact, one Washington court held that nearly identical claims to the ones raised by Mr. Espinoza in this case—"that the defendants violated privacy rights by disclosing protected private or confidential information through actions taken during the federal lawsuit"—were barred by the litigation privilege because "[f]iling documents with the court are actions pertinent to or related to a judicial proceeding." *Lahrichi v. Curran*, No. 65144-7, 2011 WL 5222806, at *3 (Wash. Ct. App. 2011).[4] Moreover, it is of no import that Mr. Espinoza seeks leave to plead causes of action for negligence, public disclosure of private facts, common law invasion of privacy, and outrage instead of claims for defamation or libel. *Bruce*, 776 P.2d 666, 670-71 (1989) (rejecting argument that litigation privilege should be limited to defamation claims and citing with approval cases that applied litigation privilege to causes of action for malicious prosecution, intentional infliction of emotional distress, negligence, and others). Because the litigation privilege is in place to curb the "chilling effect" that arises from threatened litigation over actions taken in judicial

//

---

[4] Federal courts may consider unpublished state court decisions as persuasive authority. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011); *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value"); *McSherry v. Block*, 880 F.2d 1049, 1052 n.2 (9th Cir. 1989) ("While the depublication order may constitute a factor as to whether we are bound by the Appellate Department's construction, we do not necessarily find that factor decisive.").

proceedings, the privilege applies "regardless of the theory on which that subsequent litigation is based." *Id.* at 670.

Mr. Espinoza's attempts to bring causes of action based on defense counsel's alleged litigation conduct underscores the utility and importance of the litigation privilege. As the Washington Supreme Court has noted, "[t]he principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Wynn v. Earin*, 181 P.3d 806, 814 (2008) (quoting *Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990)). Here, Mr. Espinoza does not seek to add legitimate causes of action to redress actual injuries; he seeks to retaliate against Defendants for engaging in protected litigation activity by harassing them with vexatious, derivative tort actions. Defendants are immune from such conduct under the litigation privilege. Thus, even if the court had supplemental jurisdiction over Mr. Espinoza's proposed state law claims, those claims would still be barred as futile because "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[5] *See Sweaney*, 119 F.3d at 1393 (citations omitted).

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Mr. Espinoza's motion for leave to amend (Dkt. # 63). The court also cautions Mr. Espinoza and his counsel that

---

[5] Because the court concludes that Mr. Espinoza's motion to amend is futile on multiple grounds, the court will not address the remaining factors that courts consider in determining whether leave to amend is warranted: bad faith, undue delay, prejudice to the opposing party, and whether the party has previously amended its pleading. *Allen*, 911 F.2d at 373.

borderline frivolous motions that waste judicial resources—like this one—are not well taken. Going forward, Mr. Espinoza and his counsel would be well served to focus on litigating his discrimination claims instead of engaging in scorched-earth tactics that do nothing to advance those claims.

Dated this 9th day of October, 2019.

JAMES L. ROBART
United States District Judge